JOSEPH W. DOBSON v. JOHN G. CHAMBERS, Administrator of John Brigman.

*Partnership—Evidence—Contract—Practice—Amendment.*

1. On the trial of an action against B, upon an issue as to whether one W and B were partners, there was evidence that W and B were together, and had certain stock together; that B carried a n ⸱te to bank to be discounted with a written request from W that it should be done ; that B said that the money *was for himself and W ;* that they were *buying stock together* and that the money was to be used in buying stock ; that B afterwards referred to the debt he and W owed in bank, &c. ; *Held,* that the jury were warranted in finding that a partnership existed between W and B.

2. In such action, where it appeared that the partners requested the plaintiff to pay their debt in bank and promised to repay him, and afterwards their note was taken up by certain accommodation acceptances, which the plaintiff took up with *his* note which was thereafter paid by him ; *It was held,* that the plaintiff was entitled to recover ; and the plaintiff's right to recover is not affected by the fact that he did not expressly contract to take up the defendant's note, or that a considerable period of time elapsed before he did so.

3. The exercise of the discretionary power of the Court below, in allowing an amendment to the complaint during the progress of the trial, cannot be reviewed by this Court.

(*Penny* v. *Smith,* Phil. 35 ; *Lippard* v. *Roseman,* 72 N. C. 427 ; *Dunn* v. *Barnes,* 73 N. C. 273 ; *Brandon* v. *Phelps,* 77 N. C. 44, cited and approved.)

CIVIL ACTION, tried at Fall Term, 1877, of BUNCOMBE Superior Court, before *Schenck, J.*

The case is sufficiently stated by THE CHIEF JUSTICE in delivering the opinion of this Court. There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*M ssrs. A. T. & T. F. Davidson* and *Busbee & Busbee,* for plaintiff.

*Mr. J. H. Merrimon,* for defendant.

DOBSON *v.* CHAMBERS.

SMITH, C. J. This action was instituted to recover money alleged to have been paid by the plaintiff for the use of the defendant's intestate and John W. Woodfin at their special instance and request, and is prosecuted against the defendant alone. John Brigman, the intestate, in June, 1860, was indebted to the Planter's and Miner's Bank at Murphy by note, to which the said John W. Woodfin and John E. Patton were sureties, in the sum of $6000 and due at ninety days. On the 4th day of June following, the note was taken up and a new note executed by the same parties, and substituted in its place. The last note was not paid at its maturity, and went to protest, but was afterwards taken up by two drafts each in the sum of $3000 dated March the 5th, 1861, one payable at 90, the other at 120 days from the 20th day of March, 1861, drawn by R. B. Vance in favor of J. E. Patton on said J. W. Woodfin, which drafts were accepted and endorsed to the Bank. At the same time the protested note was transmitted to said R. B. Vance.

On the 3rd day of September following, the plaintiff executed his note, with J. W. Woodfin and C. D. Smith as sureties, to the Bank in the sum of $6238.66 the amount then due on the acceptances payable at six months in place of the drafts.

This note was replaced by another note executed to the Bank by the same parties on the 4th day of March, 1862. John Brigman died on the 6th of March, 1861. The plaintiff alleges that he executed his own note for the debt due the Bank, upon the agreement of Brigman and Woodfin to reimburse him any money he might have to pay by reason of his said obligation.

This agreement, as also the existence of any co-partnership between the defendant's intestate and Woodfin, is denied in the answer.

Issues were thereupon framed without objection, and submitted to the jury who find ; (1.) That Brigman and Woodfin did in the year 1860 request the plaintiff to pay off their

note in Bank and promised to repay him if he would do so. (2.) That Brigman and Woodfin were partners and had borrowed the money for which their note was given for partnership business.

Evidence was offered on the trial of the issues, so much only of which will be stated as is necessary to a proper understanding of the defendant's exceptions.

The defendant insisted that there was no evidence of a partnership submitted to the jury, and they were not warranted in finding that any existed. It thus becomes necessary to refer to the testimony given upon the issue.

The plaintiff testified that he last saw Brigman at Asheville in September, 1860, in company with a man called Buckner; that Brigman there let plaintiff have 20 horses and a mule at the price of $2875, and Woodfin let him have 17 mules of the value of $2500; that they had the stock together at Woodfin's house in Asheville, and that the trade with Brigman was made at his house. The witness was not allowed, on objection of the defendant's counsel, to proceed further with the testimony, because both Woodfin and Brigman were dead.

The President of the Bank, Mr. Davidson, testified that Brigman brought his note to the Bank to be discounted, with a written request from Woodfin that this should be done; that the Bank was reluctant to make the loan, as the money was kept for the accommodation of stock-drivers, and Brigman said the *money was for himself and Woodfin*, and *they were buying stock together*, and the money was to be used in buying stock. The loan was made.

Another witness stated that in the Fall of 1860, he got four mules from Brigman, and Brigman said he wanted to put the money for them on the *debt he and Woodfin owed the Bank*; that he assisted Brigman to drive the stock (21 head) to Asheville, and that while on their way, Brigman remarked that he and Woodfin owed a large debt in Bank,

and had now a chance to make a large payment in stock. On reaching Asheville, Brigman, Woodfin, and a man he did not know, but who was called Dobson, had a conversation together, the purport of which he did not hear, and that afterwards he heard Brigman say, while on his way home, that he had got about $3000 for his stock, but had taken back one mule.

We think this evidence does tend to show the alleged co-partnership, and if credited by the jury, justly authorized their verdict.

2. While the trial was in progress the Court permitted the plaintiff to amend the first article of his complaint, by inserting the words " being jointly. interested as partners in the business of trading." To this the defendant also excepted.

The Judge has power to amend even after judgment any " pleading, process or proceedings," by inserting other allegations material to the case, conferred by C. C. P. § 182; *Penny* v. *Smith,* Phil. R. 35. Whether an amendment which rests in the discretion of the Judge, shall be allowed or refused, the exercise of his discretion cannot be reviewed in this Court. *Lippard* v. *Roseman,* 72 N. C. 427. This has been so often declared, that a reference to authority is entirely needless. Had the defendant asked for a mistrial and continuance on the ground of surprise, and because he was unprepared to meet the changed aspect of the plaintiff's case, resulting from the amendment, it would, we have no doubt, have been granted. This the defendant's counsel did not do, but preferred to go on with the trial. He has therefore no just cause for complaint.

3. It is next objected that the plaintiff, when asked to provide for the bank debt, did not promise to do so, so as to make a contract binding on both, without which it would be binding on neither, and if such promise has been made, an unreasonable time was suffered to elapse before the

21 a

promise was fulfilled. This objection in part rests upon a misconception of the law. If the intestate and Woodfin requested the plaintiff to provide for and pay their bank debt, and promised to repay him, and the plaintiff did afterwards pay the debt, the obligation on their part would be complete ; and this, whether the plaintiff had expressly contracted to take up the note or not. The transaction when complete would contain all the elements of a contract binding on them.

Nor was the delay so unreasonable as to exonerate the intestate and his associate partner from their obligation to repay to the plaintiff the money expended for their benefit and by their direction, even though a considerable period of time had elapsed before it was done. The acceptances and notes representing at different times the same indebtedness, did not operate to discharge the debt. The liability to pay it remained in full force until it was extinguished by the moneys of the plaintiff, and it would be no less unconscientious than opposed to the sound rules of law to permit them to take advantage of the plaintiff's payment and refuse him the indemnity promised.

The only remaining objection we propose to notice, relates to the form of the judgment, which in His Honor's opinion charge ι the defendant with assets.

If such should be its effect under the law as existing prior to the Act of April the 16th, 1869, and by which the administration of the intestate's estate is governed, it would be strictly correct, because the want of assets is a defence which should be set up in the answer, and it is not set up as required by the rules of pleading. If, however, the judgment is controlled by the provisions of that Act, the question of assets would not be involved. Bat. Rev. ch. 45 § 95; *Dunn* v. *Barnes*, 73 N. C. 273; *Brandon* v. *Phelps*, 77 N. C. 44. But in either case the opinion of the Judge is speculative merely, and the legal effect of the judgment can be

KULL v. FARMER.

determined only when the attempt is made to enforce it. In form it is unexceptionable. We therefore declare there is no error, and affirm the judgment.

No error.

PER CURIAM.                                           Judgment affirmed.