JOSEPH W. DOBSON v. JOHN G. CHAMBERS, Adm'r. of John Brigman.

*Contract—Substitution of Security—Evidence—Practice.*

1. On the trial below, it appeared that B and W, partners, executed a certain note in bank, with one P as security, which at maturity was replaced by another note executed by the same parties; that the latter after it became past due was surrendered to one V in exchange for certain drafts drawn by him upon W and payable to P, which drafts were made for the purpose of *renewing the note*, (B being then sick); that these drafts were afterwards taken up by the plaintiff who executed his own note to the bank; *Held*, that the indebtedness of B upon the original notes was not extinguished by the drafts of V; but V in his relation to the others was their surety and held their note for his own indemnity until relieved by the execution of plaintiff's note.

2. To charge one with a liability, positive and direct evidence of a previous request is not always attainable and is not required; *Therefore,* where it appeared that the plaintiff had purchased certain stock from B and W, partners, and it was in evidence that B had said on the day of sale that "he and W owed a large debt in bank and had a

chance to make a large payment in stock ;" that the plaintiff and B and W were seen together in conversation and that B afterwards said that " he had got $3000 for his stock ;" that afterwards, B being then deceased, the plaintiff took up the note of B and W by executing to the bank his own note, to which W was a surety ; *It was held,* in an action against B's administrator, that there was sufficient evidence to warrant the jury in finding that the plaintiff was requested by B and W to take up their note.

3. Where a substituted security is given at the instance and for the benefit of a debtor, the liability of the debtor is not destroyed, but is transferred to him who gives such security.

4. Where on a re-hearing of a case in this Court, it appears that no exception to the amount of the judgment was taken in the Court below on the trial, nor any issue submitted to the jury, nor any reference asked for to ascertain what was really due, and no error was pointed out in regard thereto on the former hearing, this Court will not disturb the judgment.

PETITION to rehear heard at June Term, 1878, of THE SUPREME COURT.

The defendant asked that the case (as decided and reported in 78 N. C. 334) be reheard for the following reasons :—

1. That he is advised that the holding of the Court,— that the liability of John Brigman to the Miners and Planters bank upon his note to said bank was not discharged by the drafts of R. B. Vance,—is erroneous.

2. That one of the exceptions in the case was,—that there was no evidence to support the verdict of the jury. One of the issues submitted to the jury and found in favor of plaintiff was,—" did John Brigman and J. W. Woodfin in 1860, request plaintiff to pay their bank debt, and promise to repay him, if he would do so "?   The exception so far as this issue was concerned, was not passed upon by the Court, and your petitioner insists that there was no evidence to support the finding of the jury upon this issue, and he was entitled to a new trial on this ground, and it was error in not passing upon this part of said exception.

3. That another exception in the case was,—that the judgment, if for any thing at all, should not be for any greater amount than the difference between the amount alleged in the complaint to have been paid plaintiff and the six thousand dollars. This exception was not passed upon, and your petitioner insists that this was error.

4. That there was error in the holding of the Court,— that the taking up the Vance drafts by plaintiff in September, 1861, was a compliance with his alleged contract with defendant's intestate and J. W. Woodfin to pay their note in bank.

*Messrs. Busbee & Busbee,* for plaintiff.

*Mr. J. H. Merrimon* in his argument for the defendant, cited and remarked upon *McCombs* v. *Sudderth,* 67 N. C. 353; *Wynne* v. *Ins. Co.,* 71 N. C. 121; *Com'rs* v. *Duncan,* 1 Jones 234; *Reed* v. *Moore,* 3 Ire. 314; *Wittkosky* v. *Wasson,* 71 N. C. 451; *State* v. *Brown,* 76 N. C. 222; *Henry* v. *Rich,* 64 N. C. 379; C. C. P. §§ 132, 233; *Murray* v. *Smith,* 1 Hawks 43; *Heilig* v. *Ford,* 64 N. C. 710; 2 Parsons on Cont. 535, 661; 2 Daniel on Neg. Instr. 260; Story on Prom. Notes §§ 104, 438; 1 Dev. and Bat. 291; 6 Ire. 133.

SMITH, C. J. The petition asks us to reconsider an exception which it alleges was not passed on when the case was decided at the last term. The exception is this: There was no evidence before the jury to warrant their finding that the plaintiff discharged the debt of the copartners, Brigman and Woodfin, at their instance, or at the instance of either upon any promise of repayment or indemnity.

It is true this exception was not specifically noticed and overruled in the opinion then delivered, but it was not overlooked. The proof of the copartnership, and that it was a copartnership debt, exclusively looked after and provided for by Woodfin during Brigman's illness and

after his decease, seemed so fully to involve a common responsibility to the plaintiff as to make it unnecessary to give the objection a special prominence in the discussion.

The defendant's answer to the allegations of the complaint in regard to the debt is indefinite if not evasive, in that, while the defendant admits that he has heard his intestate "say something of a debt due from himself and the late J. W. Woodfin to the Miners and Planters bank, and that said debt was six thousand dollars," he does not disclose what was said by the intestate, and adds that "he has no knowledge, information, or belief concerning said debt except from hearsay." The denials when made are almost in the words of the complaint, and are wanting in that fullness which is contemplated in our present system of pleading and practice. But we attach no special significance to these omissions, and will proceed to the consideration of the argument of the defendant's counsel and the alleged want of evidence on which it is based.

The argument is that Brigman's indebtedness was extinguished by the delivery of the acceptances of Woodfin, and did not exist in September, 1861, when the plaintiff gave his note and took up the drafts, and that his act, unless done at the request of the intestate was officious, and imposed no responsibility; and that there was no evidence of such previous request. Numerous authorities are cited in support of the first part of the proposition. Without discussing them we content ourselves with saying they do not dispose of the point at issue. It is to be observed, however, that as positive and direct evidence of a previous request is not always attainable, so it is not required to charge one with a liability. The plaintiff need not "prove an express assent of the defendant in order to enable the jury to find a previous request. They may infer it from his knowledge

of the plaintiff's act and his silent acquiescense," 2 Greenl. Ev. § 108.

The undeniable facts developed on the trial so far as they have a bearing on the question now to be considered, are these: Woodfin and Brigman were partners in buying and selling stock, and in prosecuting their joint business borrowed of the Planters and Miners bank the sum of six thousand dollars for which, on the 4th day of June, 1860, they personally with John E. Patton executed a note paya-ble at ninety days. At maturity this note was replaced by another of like amount executed by the same parties and payable on the 4th day of December following. The last note went to protest, and was some time afterwards surrendered to R. B. Vance in exchange for drafts of $3,000 each, drawn by him on Woodfin, payable to Patton, and accepted and endorsed by them respectively. The drafts were delivered to the bank, as the cashier testifies, for the purpose of *renewing the note of Brigman*, who was then sick and unable to attend to the matter in person. The drafts were taken up by the plaintiff who gave his own note, executed also by Woodfin and one Smith, on the 3rd day of September, 1861, for $6,238.66, payable at six months, and this, after successive renewals, was paid by a sale of plaintiff's property under execution. The debt of Brigman was not therefore paid in fact, but his note, the evidence of it, trans-ferred to Vance, who, in his relations with the other parties liable on these accommodation drafts, was their surety, and it must be inferred, received and held them for his own indemnity until he was relieved by the plaintiff. It then appears that the substitution of Dobson's note for the accept-ances held by the bank was made with the full *knowledge and consent of Woodfin* (upon whom, by the death of Brigman, had devolved the sole duty of managing and settling up the partnership business) manifested in his signing the plaintiff's original note and its various renewals. In fact and in legal

effect the debt secured in the note was *Woodfin's own debt* and his copartner's debt also ; and the only reasonable explanation of the form of the note must be found in some antecedent understanding and agreement, by which the plaintiff was to assume the debt and make it his own. The living partner thus directly participates in the transaction and assents to the plaintiff's act, and himself and the partnership taking the benefit thereof must be held responsible for its legal consequences.

But let us examine and see whether there be any positive evidence to warrant the finding of the jury. The statement of the testimony shows that in September, 1860, Brigman and Woodfin had a large lot of mules in Asheville, their common property, of which the former sold to the plaintiff a considerable number for $2,875, and Woodfin sold him others of the value of $2,500. The trade with Brigman was made at his house.

A witness who assisted Brigman in driving the stock to Asheville at that date, testified that he let Brigman have four mules and heard him say " he wanted to put them on the debt he and Woodfin owed the bank," and further, "that he and Woodfin owed a large debt in the bank, and had a chance to make a large payment in stock." The witness saw the plaintiff, Brigman and Woodfin, in conversation, which he did not hear ; but while on their way home, Brigman told witness "he had got $3,000 for his stock but had taken one mule back." The notes and drafts were all produced on the trial.

Do these facts furnish no evidence that the plaintiff assumed the partnership debt under some antecedent arrangement with the partners? How were the stock sales to be made available for the bank debt except by the plaintiff's appropriating the money he owed towards its payment? How is Woodfin's conduct after his partner's death to be reconciled with the theory of an unauthorized and officious

intermeddling? Upon what other principle than a previous consent can the act of giving one's note in place of another's, be accounted for or explained? How does it happen that all the securities, representing in different forms the same debt, are produced at the trial uncanceled? We can not say it was an unreasonable inference that the plaintiff incurred his liability *in consequence of a previous request* of the partners, one or both, and upon a promise, express or to be implied, of reimbursement. Still less can we say there was no evidence sufficient to authorize the verdict.

It is not material to ascertain the legal effect of an exchange of one note for another executed by a different person and for the same debt upon the rights of the creditor, and whether thereby the former obligation becomes extinct, or the securities are cumulative in his hands. The authorities collected in the carefully prepared brief of defendant's counsel are mainly directed to the elucidation of this point. However this may be, when the substituted security is given for the benefit of the debtor and at his instance, his liability is not destroyed, but transferred; and out of the very act of discharge, springs a new obligation to him who discharges it. Through all the forms which the debt at different times has assumed with the additional sureties, a *subsisting liability to some one* has rested upon the debtor, and when the debt was ultimately paid out of the proceeds of sale of the plaintiff's property, and all the other sureties thereby released, the intestate became absolutely liable to the plaintiff as a surety who had paid his principal debt, and by virtue of that relation between them.

It has been suggested that the judgment is for too large a sum, and ought to be reduced, and estimates have been submitted making a considerable reduction. It may be that the sum is excessive, but no exception seems to have

been taken in the Court below to the amount, if defendant was liable at all, and none was made in the argument upon the former hearing.

As no issue was submitted to the jury, and no reference asked for to ascertain what was really due, and no exception in this respect appears upon the record when the judgment was rendered, although objection was made to its form in another aspect, and no error was pointed out on the former hearing, we do not feel at liberty, from estimates mainly conjectural, to disturb the judgment. We are therefore of opinion that there is no error in the former judgment, and it is affirmed.

No error.

PER CURIAM.                         Judgment affirmed.